**No. 14-40856**

*In The*

# United States Court of Appeals

*for the*

# Fifth Circuit

---

EMERALD CITY MANAGEMENT, L.L.C.;
EMERALD CITY BAND, INCORPORATED,

*Plaintiffs-Appellees,*

v.

JORDAN KAHN; JORDAN KAHN
MUSIC COMPANY, L.L.C.,

*Defendants-Appellants.*

---

*On Appeal from the United States District Court for the Eastern District of
Texas, Sherman. The Honorable Richard A. Schull, United States District Judge
USDC No. 4:14-CV-358*

## BRIEF FOR DEFENDANTS-APPELLANTS

CASEY L. GRIFFITH
Email: casey.griffith@kk-llp.com
AUSTIN S. CHAMPION
Email: austin.champion@kk-llp.com
MICHAEL C. BARBEE
Email: michael.barbee@kk-llp.com
KLEMCHUK KUBASTA, L.L.P.
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
(214) 367-6000

*Attorneys for Defendants-Appellants
   Jordan Kahn and Jordan Kahn Music
   Company, L.L.C.*

CP  COUNSEL PRESS • (888) 700-3226

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Emerald City Management, LLC and Emerald City Band, Inc.
    *Plaintiffs-Appellees*,

v.                          No. 14-40856

Jordan Kahn and Jordan Kahn Music Company, LLC,
    *Defendants-Appellants*.

---

    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### <u>Plaintiffs-Appellees</u>

    1.    Emerald City Management, LLC

    2.    Emerald City Band, Inc.

### <u>Counsel for Plaintiffs-Appellees</u>

    3.    Alan L. Busch of Busch Ruotolo & Simpson, LLP

    4.    Robert Ruotolo of Busch Ruotolo & Simpson, LLP

### <u>Third-Party Defendant</u>

    5.    Dean "Deno" Taglioli

### <u>Defendants-Appellants</u>

    6.    Jordan Kahn

    7.    Jordan Kahn Music Company, LLC

<u>**Counsel for Defendants-Appellants**</u>

8.  Casey L. Griffith of Klemchuk Kubasta LLP

9.  Austin S. Champion of Klemchuk Kubasta LLP

10. Michael C. Barbee of Klemchuk Kubasta LLP

/s/ Casey L. Griffith
_____

Casey L. Griffith
Austin S. Champion
Michael C. Barbee
KLEMCHUK KUBASTA LLP
8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
(214) 367-6000
Counsel for Defendants-Appellants

## STATEMENT REGARDING ORAL ARGUMENT

The Supreme Court's *eBay* decision altered the legal landscape regarding the presumption of irreparable harm for parties seeking injunctive relief in intellectual-property disputes. In *eBay*, the Court rejected the application of a categorical presumption of irreparable harm for parties seeking a permanent injunction after succeeding on the merits of a patent-infringement claim. Two years after *eBay*, in *Winter*, the Supreme Court reaffirmed the traditional four-factor test must be satisfied for an injunction to issue—*i.e.*, the movant must show irreparable harm is likely absent injunctive relief. Applying *eBay* and *Winter*, other courts of appeals have held there is no presumption of irreparable harm for parties seeking preliminary injunctive relief in trademark-infringement suits. This Circuit remains undecided.

The majority of courts and commentary adopt the view that a junior user's knowledge of a senior user's mark defeats a claim of good faith in the remote, good-faith-user doctrine. This Circuit has not expressly joined the majority.

Because these issues remain undecided and are important to this Circuit's intellectual property jurisprudence, Appellants respectfully request oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS..........................................................................................iv

TABLE OF AUTHORITIES ...................................................................................vi

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUES PRESENTED....................................................1

STATEMENT OF THE CASE.................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................5

ARGUMENT .............................................................................................................7

I.       APPELLATE STANDARD OF REVIEW ....................................................7

II.      THE PRELIMINARY INJUNCTION STANDARD ....................................7

III.     THE DISTRICT COURT ERRED IN GRANTING PRELIMINARY
         INJUNCTIVE RELIEF ABSENT EVIDENCE OF A LIKELIHOOD
         OF IRREPARABLE HARM..........................................................................8

         A.      The district court erred in relying on a presumption of irreparable
                 harm in granting preliminary injunction relief......................................8

                 1.      The applicable standard of review is *de novo*.............................8

                 2.      The Supreme Court's holdings in *eBay* and *Winter*
                         foreclosed the presumption of irreparable harm in
                         trademark-infringement cases.....................................................9

a.      The *eBay* Court rejected the presumption of irreparable harm for parties seeking injunctive relief ....10

b.      The *Winter* Court reaffirmed that parties seeking an injunction must show irreparable harm is likely absent injunctive relief....................................................12

c.      The principles underlying the *eBay* and *Winter* decisions extend to trademark-infringement suits..........13

B.      The district court erred in granting a preliminary injunction absent proof of irreparable harm .........................................................20

1.      The applicable standard of review is the clearly erroneous standard ...................................................................................20

2.      ECM failed to establish it will suffer irreparable harm absent injunctive relief..............................................................20

IV.     THE DISTRICT COURT ERRED IN FINDING ECM ADOPTED THE MARK IN GOOD FAITH ..................................................................21

A.      The applicable standard of review is *de novo* ...................................21

B.      Good faith cannot exist where a junior user had knowledge of the senior user's use of the mark at the critical date.................................22

CONCLUSION ........................................................................................30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abraham v. Alpha Chi Omega*,
    708 F.3d 614 (5th Cir. 2013) ...................................................................9, 10

*Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*,
    42 F.3d 1421 (3d Cir. 1994) .............................................................8

*Amoco Prod. Co. v. Gambell*,
    480 U.S. 531 (1987)........................................................................14

*Audi AG v. D'Amato*,
    469 F.3d 534 (6th Cir. 2006) ........................................................17

*Apple Barrel Prods., Inc. v. Beard*,
    730 F.2d 384 (5th Cir. 1984) ..........................................................7

*Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*,
    633 F.2d 746 (8th Cir. 1980) ..........................................................9

*Brennan's, Inc. v. Brennan*,
    289 Fed. App'x 706 (5th Cir. 2008)................................................8

*Brennan's, Inc. v. Brennan's Rest., LLC*,
    360 F.3d 125 (2d Cir. 2004) ...........................................................9

*Byrum v. Landreth*,
    566 F.3d 442 (5th Cir. 2009) ..........................................................7

*C.P. Interests, Inc. v. California Pools, Inc.*,
    238 F.3d 690 (5th Cir. 2001) ..........................................23, 25, 26

*Circuit City Stores, Inc. v. CarMax, Inc.*,
    165 F.3d 1047 (6th Cir. 1999) ........................................................9

*Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*,
   634 F.3d 1005 (8th Cir. 2011) ........................................................................19

*Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*,
   710 F.3d 579 (5th Cir. 2013) ..........................................................................21

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) ............................................................................7

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975)............................................................................................7

*eBay v. MercExchange, LLC*,
   547 U.S. 388 (2006)................................................................................ *passim*

*El Chico, Inc. v. El Chico Café*,
   214 F.2d 721 (5th Cir. 1954) ...................................................25, 26, 27, 28

*Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*,
   332 F.3d 264 (4th Cir. 2003) ..........................................................................22

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
   765 F.3d 205 (3d Cir. 2014) .............................................................12, 14, 15

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
   654 F.3d 989 (9th Cir. 2011) ..........................................................................15

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ..........................................................................9

*Healthpoint, Ltd. v. Ethex Corp.*,
   273 F. Supp. 2d 817 (W.D. Tex. 2001) ........................................................30

*Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) .................................................12, 13, 14, 16

*Hanover Star Milling Co. v. Metcalf*,
   240 U.S. 403 (1916)..........................................................................................24

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011) ......................................................................7, 8

*Johanna Farms, Inc. v. Citrus Bowl, Inc.*,
    468 F. Supp. 866 (E.D.N.Y. 1978)...........................................................23, 28

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) ..................................................................1, 7

*McDonald's Corp. v. Robertson*,
    147 F.3d 1301 (11th Cir. 1998) .....................................................................9

*MercExchange, LLC v. eBay, Inc.*,
    401 F.3d 1323 (Fed. Cir. 2005) ...................................................................11

*Money Store v. Harriscorp. Finance, Inc.*,
    689 F.2d 666 (7th Cir. 1982) ......................................................................23

*Munaf v. Geren*,
    553 U.S. 674 (2008)......................................................................................7

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
    522 F.3d 1211 (11th Cir. 2008) .............................................................. 18-19

*Nat'l Ass'n for Healthcare Commc'ns, Inc. v. Central Ark. Area Agency on*
    *Aging, Inc.*,
    257 F.3d 732 (8th Cir. 2001) ......................................................................23

*Novus Franchising, Inc. v. Dawson*,
    725 F.3d 885 (8th Cir. 2013) ......................................................................19

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
    143 F.3d 800 (3d Cir. 1998) .........................................................................9

*Pike v. Ruby Foo's Den, Inc.*,
    232 F.2d 683 (D.C. Cir. 1956).....................................................................23

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
    529 F.3d 303 (5th Cir. 2008) ..................................................................9, 20

*Richardson v. Suzuki Motor Co.*,
    868 F.2d 1226 (Fed. Cir. 1989) ....................................................................11

*S. Monorail Co. v. Robbins & Myers, Inc.*,
    666 F.2d 185 (5th Cir. Unit B 1982) ......................................................9, 10

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ............................................................................19

*Societe Des Produits Nestle, SA v. Casa Helvetia, Inc.*,
    982 F.2d 633 (1st Cir. 1992) ...........................................................................9

*Speaks v. Kruse*,
    445 F.3d 396 (5th Cir. 2006) ..........................................................................8

*Sugar Busters, LLC v. Brennan*,
    177 F.3d 258 (5th Cir. 1999) ........................................................................29

*Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*,
    704 F.3d 44 (1st Cir. 2013) ...........................................................................18

*Thrifty Rent-A-Car Sys., Inc. v. Thrift Carts, Inc.*,
    831 F.2d 1177 (1st Cir. 1987) .......................................................................23

*TMT N. Am., Inc. v. Magic Touch GmbH*,
    124 F.3d 876 (7th Cir. 1997) ...................................................................29, 30

*Ty, Inc. v. Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) ..........................................................................9

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    511 Fed. App'x 81 (2d Cir. 2013) .................................................................19

*Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*,
    909 F.2d 839 (5th Cir. 1990) ........................................................................22

*United Drug Co. v. Theodore Rectanus Co.*,
    248 U.S. 90 (1918) ...................................................................................24, 25

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
    645 F.3d 26 (1st Cir. 2011).................................................... 8, 12, 14, 17, 18

*Weinberger v. Romero-Barceló*,
    456 U.S. 305 (1982).......................................................................................8

*White v. Carlucci*,
    862 F.2d 1209 (5th Cir. 1989) ......................................................................7

*Winter v. Natural Res. Defense Council, Inc.*,
    555 U.S. 7 (2008).................................................................................. *passim*

*Woman's World Shops Inc. v. Lane Bryant Inc.*,
    5 U.S.P.Q. 2d 1985 (T.T.A.B. 1988)............................................................23

*Yankee Spirits, Inc. v. Gasbarro*,
    No. Civ. 96-10967PBS, 1998 WL 428092 (D. Mass. 1998).........................23

## Statutes

15 U.S.C. § 1072 .........................................................................................28

15 U.S.C. § 1115(b)(5).................................................................................28

15 U.S.C. § 1116(a) .....................................................................................13

28 U.S.C. § 1292(a)(1)...................................................................................1

28 U.S.C. § 1331 ............................................................................................1

28 U.S.C. § 1367 ............................................................................................1

35 U.S.C. § 283 ...........................................................................................13

**Other**

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:4 (4th ed.)..........30

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:7 (4th ed.)..........23

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:47
    (4th ed. 2001)...............................................................................................10

## STATEMENT OF JURISDICTION

The district court has jurisdiction over this Lanham Act action pursuant to 28 U.S.C. §§ 1331 and 1367.[1]  On August 1, 2014, the district court entered an order adopting the magistrate judge's report and recommendation and granting Defendants-Appellees' motion for preliminary injunction.[2]  Plaintiffs-Appellants timely filed a notice of appeal on August 8, 2014.[3]  Under 28 U.S.C. § 1292(a)(1), this Court has jurisdiction over this appeal from the district court's order granting injunctive relief.[4]

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the district court erred in preliminarily enjoining Defendants-Appellants under the Lanham Act where Plaintiffs-Appellees offered no evidence of irreparable harm and the district court made no findings of irreparable harm.

2.     Alternatively, whether the district court erred in preliminarily enjoining a senior user's use of its trademark where a junior user adopts the senior user's mark with knowledge of the mark and subsequently sues the senior user for using the mark in violation of the Lanham Act.

---

[1] 28 U.S.C. §§ 1331, 1367.
[2] ROA.421.
[3] ROA.425.
[4] 28 U.S.C. § 1292(a)(1); *see Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991) ("An order granting a preliminary injunction [is] . . . made appealable pursuant to 28 U.S.C. § 1292(a)(1).").

## STATEMENT OF THE CASE

Defendant-Appellant Jordan Kahn is a talented musician from Plano, Texas. After graduating from high school in 2005, Mr. Kahn attended college at the Berklee College of Music in Boston, Massachusetts.[5]   In 2006, Mr. Kahn formed a band in Boston called Downtown Fever.[6]   In 2009, Mr. Kahn expanded the Downtown Fever brand by creating a second Downtown Fever band in Nashville, Tennessee.[7]   In 2011, Mr. Kahn formed a third Downtown Fever band based in New York, New York.[8]   Mr. Kahn has continuously operated a website for his Downtown Fever bands, <www.downtownfever.com>, since February 2006.[9]

Dean Taglioli is also a musician and an owner of Plaintiffs-Appellees Emerald City Management, LLC and Emerald City Band, Inc. (collectively, "ECM").  Mr. Taglioli started the Emerald City band in 1983.[10]   While still in high school, Mr. Kahn met Mr. Taglioli and did some work for him.[11]   The two stayed in touch after Mr. Kahn moved to college in Boston.  Mr. Taglioli eventually told

---

[5] ROA.873.
[6] *Id.*
[7] *Id.*
[8] ROA.873-74.
[9] ROA.842.
[10] ROA.773.
[11] ROA.778.

2

Mr. Kahn he would have an opportunity for Mr. Kahn at Emerald City Management if he came back to Plano after college.[12]

Mr. Taglioli was intimately aware of Mr. Kahn's Boston Downtown Fever band.[13]  Mr. Taglioli even "advised [Mr. Kahn] and actually mentored him through [the] process" of starting the Boston Downtown Fever band.[14]  In 2008, Mr. Kahn and the Downtown Fever band performed in Dallas, Texas.[15]  After graduating from Berklee in 2009, Mr. Kahn came back to work with Mr. Taglioli in Texas.[16]  After joining Mr. Taglioli in Texas, Mr. Kahn continued to market the Downtown Fever brand in Texas by creating a new band and acting as the bandleader.[17]  Over the course of five years, Mr. Kahn traveled "all over the nation" with the Downtown Fever band.[18]

In May 2014, Mr. Kahn resigned from his position with Emerald City Management.  ECM filed suit against Mr. Kahn and Jordan Kahn Music Company, LLC (collectively "Kahn") on June 3, 2014.[19]  The same day, ECM filed an Application for a Temporary Restraining Order and Preliminary Injunction.[20]

---

[12] *Id.*
[13] ROA.778.
[14] ROA.779.
[15] ROA.839.
[16] ROA.779.
[17] ROA.782-83.
[18] ROA.889.
[19] ROA.12.
[20] ROA.41.

ECM specifically requested the court enjoin Kahn from, among other things, "directly or indirectly using the name Downtown Fever," or "posting any reference to Downtown Fever on any website or social media, and to take down any sites containing the name Downtown Fever."[21]

The district court referred ECM's Application to Magistrate Judge Bush.[22] Judge Bush held a hearing on ECM's Application on June 6, 2014.[23] On June 19, 2014, Judge Bush entered a Report and Recommendation of United States Magistrate Judge.[24] In the report, the Judge Bush found, among other things: (a) Kahn is the senior user of the DOWNTOWN FEVER mark (hereinafter, the "Mark"); (b) Kahn has the right to use the Mark in the Boston area; (c) there is sufficient credible evidence Kahn agreed ECM would "own" the Mark in the Texas area; and (d) ECM had a good faith belief it could use the Mark even if Kahn's consent was ultimately necessary.[25] Judge Bush concluded a likelihood of confusion is presumed since both parties use the Mark and there is credible testimony actual confusion occurred.[26] He further concluded ECM demonstrated a substantial likelihood of success on the merits, that "it will be faced with irreparable injury," that no public interest will be disserved in granting the

---

[21] ROA.50.
[22] ROA.78.
[23] ROA.762.
[24] ROA.199-207.
[25] ROA.204-05.
[26] ROA.205.

injunction, and that the threatened injury outweighs any harm that will result from an injunction.[27]   He recommended the district court grant the preliminary injunction.[28]

Kahn timely filed objections, arguing Judge Bush erred by, among other things: (a) finding ECM acted in good faith; (b) finding there was credible evidence Kahn agreed ECM would "own" the Mark in Texas; and (c) concluding ECM demonstrated irreparable injury.[29]   The district court adopted the Report and Recommendation of Magistrate Judge Bush with modification.[30]   Specifically, the district court stated: "With respect to the second factor (irreparable injury), a leading treatise states, [a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed."[31]   Kahn timely appealed.[32]

## SUMMARY OF THE ARGUMENT

The Supreme Court's *eBay* decision altered the legal landscape regarding the presumption of irreparable harm for parties seeking injunctive relief in intellectual property disputes.  In *eBay*, the Court held categorical rules cannot be squared with traditional principles of equity, and absent an indication of congressional intent to

---

[27] *Id.*
[28] *Id.*
[29] ROA.232-40.
[30] ROA.421
[31] ROA.422-23.
[32] ROA.425 (internal citations and quotations omitted).

depart from these principles, equity controls. It therefore rejected the application of a categorical presumption of irreparable harm for parties seeking a permanent injunction after succeeding on the merits of a patent-infringement claim. Two years after *eBay*, in *Winter*, the Supreme Court reaffirmed the traditional four-factor test must be satisfied for an injunction to issue—*i.e.*, the movant must show irreparable harm is likely absent injunctive relief. Contrary to *eBay* and *Winter*, the district court relied upon a presumption of irreparable harm in granting injunctive relief. Indeed, ECM offered no argument or evidence of irreparable harm and the district court made no findings of irreparable harm. The district court therefore erred in concluding ECM satisfied its burden of showing a likelihood of irreparable harm absent injunctive relief.

The district court also erred in preliminarily enjoining Kahn, the senior user, from using his Mark despite finding ECM, the junior user, had knowledge of Kahn's prior use of the Mark. Under the remote, good-faith user doctrine, a junior user may enforce a mark in a particular area if the area is geographically remote from the senior user's market at the time the junior user appropriated the mark and the junior user adopts the mark in good faith. The district court's conclusion ECM acted in good faith is contrary to the view held by the majority of courts that a junior user's knowledge of a senior user's mark defeats a claim of good-faith adoption of the mark. And absent good faith, a junior user cannot obtain remote,

good-faith user status. Accordingly, the district court erred in concluding ECM is a remote, good-faith user.

## ARGUMENT

## I.    APPELLATE STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction is reviewed for abuse of discretion.[33] The district court's findings of fact are subject to the clearly erroneous standard of review, while its conclusions of law are reviewed *de novo*.[34] Because the Court applies this tripartite standard, Kahn will identify the appropriate standard of review at the outset of each argument.

## II.    THE PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy"[35]—one that should be granted only if the moving party clearly carries its burden of persuasion by establishing:

> (1) he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the

---

[33] *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931-32 (1975); *Lakedreams*, 932 F.2d at 1107 (citing *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984)).

[34] *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 267-68 (5th Cir. 2012); *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011); *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Lakedreams*, 932 F.2d at 1107; *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

[35] *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted).

balance of equities tips in his favor, and (4) that an injunction is in the public interest.[36]

The Supreme Court has repeatedly held the basis for injunctive relief is irreparable injury and the inadequacy of legal remedies.[37]   An injunction should therefore issue only where a court of equity's intervention is essential to protect property rights against injuries otherwise impossible to cure.[38]

## III.   THE DISTRICT COURT ERRED IN GRANTING PRELIMINARY INJUNCTIVE RELIEF ABSENT EVIDENCE OF A LIKELIHOOD OF IRREPARABLE HARM

### A.   The district court erred in relying on a presumption of irreparable harm in granting preliminary injunction relief.

#### 1.   The applicable standard of review is *de novo.*

The district court's decision to presume irreparable harm in granting preliminary injunctive relief was a misapplication of the law.   It is therefore reviewed *de novo.*[39]

---

[36] *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Brennan's, Inc. v. Brennan*, 289 Fed. App'x 706, 707 (5th Cir. 2008) (citing *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006)).

[37] *Weinberger v. Romero-Barceló*, 456 U.S. 305, 312 (1982).

[38] *Id.*

[39] *Janvey*, 647 F.3d at 592; *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 31-32 (1st Cir. 2011); *Am. Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[A] court of appeals must reverse if the district court has proceeded on the basis of an erroneous view of the applicable law.").

## 2. The Supreme Court's holdings in *eBay* and *Winter* foreclosed the presumption of irreparable harm in trademark-infringement cases.

The district court's reliance on a presumption of irreparable harm in granting injunctive relief under the Lanham Act is inconsistent with the Supreme Court's *eBay*[40] and *Winter*[41] decisions discussed below.  Prior to these landmark decisions, other courts of appeals held district courts could presume irreparable harm in trademark-infringement suits upon a finding of a likelihood of confusion.[42]  This Court, however, "has avoided expressly adopting this presumption of irreparable injury" both before[43] and after[44] the Supreme Court's *eBay* and *Winter* decisions.[45]

---

[40] *eBay v. MercExchange, LLC*, 547 U.S. 388 (2006).

[41] *Winter*, 555 U.S. at 7.

[42] *See Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 129 (2d Cir. 2004); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000); *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998); *Societe Des Produits Nestle, SA v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 n.7 (8th Cir. 1980).

[43] *S. Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 188 (5th Cir. Unit B 1982) ("[W]e need not decide, and we express no views upon whether a presumption of irreparable injury as a matter of law is appropriate once a party demonstrates a substantial likelihood of success on the merits of an infringement claim.").

[44] *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (post-*eBay* decision noting: "We have no need to decide whether a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case, a difficult question considering the Supreme Court's opinion in *eBay*."); *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (post *eBay* and *Winter*).

Indeed, in *Abraham*—the post-*eBay* and *Winter* decision relied upon by the district court—this Court did not expressly hold a presumption of irreparable harm exists; rather, it quoted a pre-*eBay* and *Winter* treatise in finding the district court did not abuse its discretion by relying on the "degree of prejudice" test in fashioning permanent injunctive relief.[46]

Because the district court erred in presuming irreparable harm, and because no evidence of a likelihood of irreparable harm exists, Kahn respectfully requests the Court reverse the district court's order granting a preliminary injunction.

### a.    The *eBay* Court rejected the presumption of irreparable harm for parties seeking injunctive relief.

In its 2006 *eBay* opinion, the Supreme Court unanimously rejected the presumption of irreparable harm, and instead held a patent infringement plaintiff seeking a permanent injunction must set forth sufficient proof to establish each prong of the four-factor test for injunctive relief before an injunction may issue.[47]

The underlying facts in *eBay* are straightforward.  The plaintiff filed suit against eBay and a subsidiary for infringing its business-method patent.[48]  The jury

---

[45] *Id.* (quoting *S. Monorail*, 666 F.2d at 188).

[46] *See Abraham*, 708 F.3d at 627 (quoting 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:47 (4th ed. 2001)) ("As to the first factor, a leading treatise states, 'All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.'").

[47] *eBay*, 547 U.S. at 394.

[48] *Id.* at 390.

found the patent was valid, it had been infringed by eBay and its subsidiary, and that damages were appropriate.[49]  Following the verdict, the district court denied the plaintiff's request for permanent injunctive relief.[50]  The Federal Circuit reversed the lower court's decision and applied the "general rule" that permanent injunctions will issue for patent infringement absent exceptional circumstances.[51]  In doing so, the Federal Circuit cited its precedent allowing a presumption of irreparable harm when a clear showing of patent validity and infringement had been made.[52]  On appeal, the Supreme Court held neither the district court nor the Federal Circuit correctly applied the traditional four-factor framework that governs injunctive relief, and vacated the judgment of the Federal Circuit so the district court could apply the proper standard.[53]

In eliminating the presumption of irreparable harm in patent infringement suits, the Court focused largely on well-established principles of equity.[54]  Indeed, it found absent an indication of congressional intent to depart from traditional principles of equity, equity controls.[55]  The Court saw no such indication by

---

[49] *Id.* at 390-91.
[50] *Id.* at 391.
[51] *Id.*
[52] *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338 (Fed. Cir. 2005) (citing *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1246-47 (Fed. Cir. 1989)).
[53] *eBay*, 547 U.S. at 394.
[54] *Id.* at 391-94.
[55] *Id.* at 391-92.

Congress in drafting the Patent Act.[56]  To the contrary, the Court noted "the Patent Act expressly provides that injunctions 'may' issue 'in accordance with the principles of equity.'"[57]  These principles, the Court found, "cannot be squared" with categorical rules.[58]  And because of that, the Court eliminated the presumption of irreparable harm once a patent-infringement plaintiff succeeds on the merits.[59]

> **b.    The *Winter* Court reaffirmed that parties seeking an injunction must show irreparable harm is likely absent injunctive relief.**

Two years after *eBay*, the Supreme Court specifically addressed the standard for demonstrating irreparable harm in the preliminary injunction context.[60]  In *Winter*, several environmental groups sought to preliminarily enjoin the Navy from conducting certain training exercises they believed would negatively impact the environment.[61]  In granting the injunction, the district court and Ninth Circuit held that when a plaintiff shows a strong likelihood of success on the merits, a

---

[56] *Id.*

[57] *Id.* at 392 (citing 35 U.S.C. § 283).

[58] *eBay*, 547 U.S. at 393.

[59] *Id.* at 394.

[60] *Winter*, 555 U.S. at 20-24.  Although *Winter* is not an intellectual property case, and does not mention *eBay*, it still applies here.  *See, e.g., Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 212-13 (3d Cir. 2014) (discussing *Winter* in Lanham Act context); *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249-50 (9th Cir. 2013) (same); *Arab World*, 645 F.3d at 34 (same).

[61] *Winter*, 555 U.S. at 16-17.

preliminary injunction may issue based on a *possibility* of irreparable harm.[62]  On

appeal to the Supreme Court, the Navy argued a plaintiff must demonstrate a

likelihood of irreparable harm—not merely a possibility—to obtain injunctive

relief.[63]  The Supreme Court agreed.[64]

The Court found the "possibility standard" too lenient.[65]  It noted the

issuance of a preliminary injunction based only on a *possibility* of irreparable harm

is inconsistent with its characterization of injunctive relief as an extraordinary

remedy.[66]  And in turn, the Court reiterated that plaintiffs seeking preliminary

injunctive relief must demonstrate irreparable injury is *likely* in the absence of an

injunction—not just *possible*.[67]

### c.    The principles underlying the *eBay* and *Winter* decisions extend to trademark-infringement suits.

Although *eBay* addressed injunctive relief under the Patent Act, the Court's

reasoning applies to all cases, including those for trademark infringement.  Indeed,

both the Patent Act and Lanham Act expressly provide that injunctions may be

---

[62] *Id.* at 21.

[63] *Id.*

[64] *Id.* at 22.

[65] *Id.*

[66] *Id.*

[67] *Id.*

granted in accordance with the "principles of equity."[68]   Neither statute indicates

Congress intended to depart from well-established principles of equity—a factor

heavily relied upon by the Supreme Court in *eBay*.[69]

The Supreme Court's reasoning in *eBay* applies equally to this case.[70]   The

Supreme Court has repeatedly recognized "[t]he standard for a preliminary

injunction is essentially the same as for a permanent injunction with the exception

that the plaintiff must show a likelihood of success on the merits rather than actual

success."[71]   The *eBay* Court's citation to *Amoco*—a preliminary injunction case—

in support of the four-prong standard, buttresses the lack of distinction.[72]

---

[68] 35 U.S.C. § 283; 15 U.S.C. § 1116(a); *see Herb Reed*, 736 F.3d at 1239) (internal citations omitted) ("Both statutes provide that injunctions may be granted in accordance with 'principles of equity.'").

[69] *See Herb Reed*, 736 F.3d at 1249 (quoting *eBay*, 547 U.S. at 391-92) (internal quotations omitted) ("Just as nothing in the Patent Act indicates that Congress intended [] a departure [from the traditional principles of equity], so too nothing in the Lanham Act indicates that Congress intended a departure for trademark infringement cases.").

[70] *See Ferring Pharms.*, 765 F.3d at 216 (quoting *Herb Reed*, 736 F.3d at 1249) ("[T]he *eBay* principle—that a plaintiff must establish irreparable harm—applies to a preliminary injunction in a trademark infringement case.").

[71] *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n.12 (1987); *see Winter*, 555 U.S. at 31 ("The factors examined above—the balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent."); *Arab World*, 645 F.3d at 34 ("[T]he fact that *eBay* dealt with a permanent injunction does not change our conclusion that its principles are equally applicable in the context of preliminary injunctions.").

[72] *See eBay*, 547 U.S. at 391.

The *Winter* Court's holding reaffirmed the application of the traditional four-factor test.  In resolving the same question, the Ninth Circuit concluded if requiring a plaintiff to "demonstrate at least a possibility of irreparable harm[] is 'too lenient', then surely a standard which presumes irreparable harm without requiring any showing at all is also 'too lenient.'"[73]   Indeed, the *Winter* Court reiterated that injunctive relief is an extraordinary remedy—one that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[74]   And presuming irreparable harm—whether in the trademark context or otherwise—"would relieve the plaintiff of her burden to make such a showing."[75]

A review of sister circuit decisions is informative.  Recently, in *Ferring Pharms.*, the Third Circuit held "there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act cases."[76]   In doing so, the Third Circuit found *eBay*'s rationale "equally applicable in other contexts, including cases arising under the Lanham Act."[77]   It reasoned *eBay* allows for departure from longstanding principles of equity only to the extent Congress intended such a departure.[78]   The *Ferring Pharms.* court then noted the Lanham Act—like the Patent Act—requires courts to grant or deny injunctions according to

---

[73] *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011).
[74] *Winter*, 555 U.S. at 22.
[75] *Ferring Pharms.*, 765 F.3d at 217.
[76] *Id.* at 216.
[77] *Id.* at 214.
[78] *Id.* at 214-15.

principles of equity.[79]   And because a presumption of irreparable harm deviates from those principles, the Third Circuit held a presumption of irreparable harm in Lanham Act cases does not exist.[80]

Similarly, in *Herb Reed*, the Ninth Circuit extended the *eBay* analysis to trademark infringement claims.[81]   There, the founder of a popular 1950's vocal performing group sought to preliminarily enjoin the defendants' use of his trademark.[82]   The district court, in granting the injunction, found a likelihood of irreparable harm.[83]   On appeal, the Ninth Circuit held the district court abused its discretion by relying on unsupported and conclusory statements in finding a likelihood of irreparable harm.[84]   And although the district court had not presumed irreparable harm, the Ninth Circuit held a plaintiff must establish a likelihood of irreparable harm in trademark-infringement suits—*i.e.*, it eliminated the presumption.[85]   In doing so, the Ninth Circuit noted that allowing a presumption of irreparable harm effectively collapses the likelihood of success and irreparable harm factors into one.[86]   It stated:

---

[79] *Id.* at 215-16.
[80] *Id.* at 216.
[81]  *Herb Reed*, 736 F.3d at 1249.   The Supreme Court denied Herb Reed Enterprises, LLC's petition for certiorari review on October 6, 2014.
[82] *Id.* at 1242-43.
[83] *Id.* at 1245.
[84] *Id.* at 1250.
[85] *Id.* at 1251.
[86] *Id.*

> [j]ust as nothing in the Patent Act indicates that Congress intended [a departure from traditional principles of equity], so too nothing in the Lanham Act indicates that Congress intended a departure for trademark infringement cases. Both statutes provide that injunctions may be granted in accordance with the principles of equity.[87]

The Sixth Circuit likewise interprets *eBay* to eliminate the presumption of irreparable harm. In *Audi*, the district court granted an automobile manufacturer's request for a permanent injunction following summary judgment on its trademark infringement and related claims.[88] The defendant appealed.[89] Citing *eBay*, the Sixth Circuit held a plaintiff seeking a permanent injunction must establish it has suffered irreparable harm.[90]

The First, Second, and Eleventh Circuits have questioned the presumption in light of *eBay* and *Winter*, but have declined to take a definitive position. In *Arab World*, for example, the First Circuit declined to address the issue because it found the district court abused its discretion in applying the presumption in light of prior holdings finding the presumption inapplicable where the party seeking injunctive relief excessively delays in seeking such relief.[91] It also found the parties' briefing inadequate on the issue.[92] Despite that, the First Circuit noted:

---

[87] *Id.* at 1249 (internal quotations and citations omitted).
[88] *Audi AG v. D'Amato*, 469 F.3d 534, 539 (6th Cir. 2006).
[89] *Id.*
[90] *Id.* at 550.
[91] *Arab World*, 645 F.3d at 34.
[92] *Id.* at 35.

> Although *eBay* dealt with the Patent Act, in the context of a request for permanent injunctive relief, we see no principled reason why it should not apply in the present case.[93]

It reasoned:

> First, the text and logic of *eBay* strongly suggest that the traditional principles of equity it discussed should be presumed to apply whenever a court must determine whether to issue an injunction, whether the case is a patent case or any other type of case.
> . . . .
>
> Second, the fact that *eBay* dealt with a permanent injunction does not change our conclusion that its principles are equally applicable in the context of preliminary injunctions.[94]

Similarly, in *North American Medical Corp.*, in declining to decide whether a presumption exists, the Eleventh Circuit stated:

> Although *eBay* dealt with the Patent Act and with permanent injunctive relief, a strong case can be made that *eBay*'s holding necessarily extends to the grant of preliminary injunctions under the Lanham Act. Similar to the Patent Act, the Lanham Act grants federal courts the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable. Furthermore, no obvious distinction exists between permanent and preliminary injunctive relief to suggest that *eBay* should not apply to the latter. Because the language of the Lanham Act—granting federal courts the power to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable—is so

---

[93] *Id.* at 33.

[94] *Id.* at 33-34; *see Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 54 (1st Cir. 2013) (quoting *Arab World*, 645 F.3d at 33) (noting "there is 'no principled reason why *eBay* should not apply' to a request for a preliminary injunction to halt trademark infringement, despite the difference in context" but declining to rule on the issue given the district court's decision did not include adequate findings to support its grant of an injunction).

similar to the language of the Patent Act, we conclude that the Supreme Court's *eBay* case is applicable to the instant case.[95]

Lastly, in *U.S. Polo Ass'n*, the Second Circuit noted, although the district court did not apply a presumption, that irreparable harm "is a factual finding nonetheless, and not simply the product of a legal presumption."[96]

In one Eighth Circuit post-*eBay* opinion, the court appears to consider the presumption alive by affirming a permanent injunction and stating "in trademark law, injury is presumed once a likelihood of confusion has been established."[97] Curiously, however, the court failed to mention *eBay* or its implications.[98]  And in fact, a later Eighth Circuit opinion questioned, without deciding, whether a presumption of irreparable harm still arises post-*eBay*.[99]  The Fourth, Seventh, and Tenth Circuits have not yet considered the issue.

The Supreme Court's holdings in *eBay* and *Winter* eliminated any presumption of irreparable harm upon the finding of a likelihood of confusion in

---

[95] *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008).

[96] *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 511 Fed. App'x 81, 85 (2d Cir. 2013); *see also Salinger v. Colting*, 607 F.3d 68, 77-78 (2d Cir. 2010) ("[N]othing in the text or logic of *eBay* suggests that its rule is limited to patent cases.  On the contrary, *eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context.").

[97] *Community of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011).

[98] *See id.*

[99] *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013).

trademark-infringement suits.  In light of that, the district court erred in presuming

irreparable harm.  Its decision should be reversed.

> **B.     The district court erred in granting a preliminary injunction absent proof of irreparable harm.**
>
> > **1.     The applicable standard of review is the clearly erroneous standard.**

Whether a party will suffer irreparable harm absent injunctive relief is

reviewed under the clearly erroneous standard because it is a question of fact.[100]

> > **2.     ECM failed to establish it will suffer irreparable harm absent injunctive relief.**

ECM offered no evidence or argument to suggest it would be irreparably

harmed absent injunctive relief.  The district court made no findings of facts

supporting irreparable harm; rather, it relied on the presumption, and then

alternatively concluded ECM "will be faced with irreparable injury."[101]  In effect,

both ECM and the district court relied solely on a presumption of irreparable harm.

Because the presumption of irreparable harm was eliminated by *eBay* and

*Winter*, ECM must establish it is likely to suffer irreparable harm—that is, harm

for which there is no adequate remedy at law—to receive the extraordinary remedy

---

[100] *See Paulsson*, 529 F.3d at 313 (applying the clearly erroneous standard in affirming the district court's finding of a substantial threat of irreparable injury absent injunctive relief).

[101] ROA.422-23 ("With respect to the second factor (irreparable injury), a leading treatise states, [a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.") (internal citations and quotations omitted); ROA.205 ("Emerald City has demonstrated . . . that it will be faced with irreparable injury.").

of a preliminary injunction.[102]  ECM made no such showing, and the district court's cursory conclusion is unsupported by the record.  Indeed, the district court failed to describe how ECM would be harmed, let alone irreparably.  And neither the district court nor ECM cite *any* evidence to support a likelihood of irreparable harm.  There is no evidence of lost sales, appropriation of goodwill, that monetary damages are inadequate, or any other evidence suggesting an ongoing harm.

*eBay* and *Winter* both require evidentiary support to show a likelihood of irreparable harm absent injunctive relief.  The district court made no findings of fact supporting a likelihood of irreparable harm to ECM if the injunction were not granted, and the record does not support such harm.  The district court's finding of irreparable harm was clearly erroneous.  Accordingly, the district court's decision should be reversed.

## IV.  THE DISTRICT COURT ERRED IN FINDING ECM ADOPTED THE MARK IN GOOD FAITH

### A.     The applicable standard of review is *de novo.*

Whether a junior user's knowledge of prior use of a mark at the time of its adoption prevents a finding of good faith is a question of law.  It is therefore reviewed *de novo.*

---

[102] *Daniels Health Sciences, LLC v. Vascular Health Sciences, LLC*, 710 F.3d 579, 585 (5th Cir. 2013).

**B.    Good faith cannot exist where a junior user had knowledge of the senior user's use of the mark at the critical date.**

To prove a likelihood of success on the merits, a party seeking an injunction for trademark infringement must first prove the mark it seeks to protect is eligible for protection.[103]   Ordinarily, it must then prove it is the senior user of the mark and there is a likelihood of confusion between its mark and the junior user's mark.[104]   But where a junior user desires to enjoin a senior user, and there is no abandonment by the senior user, the junior user must first prove it adopted the mark as a remote, good faith user.

Under the remote, good faith user doctrine (also known as the *Tea Rose-Rectanus* doctrine), a junior user may enforce a mark in a particular area if: (1) the area was geographically remote from the senior user's market at the time the junior user appropriated the mark; and (2) the junior user adopted the mark was in good faith.[105]

The district court erred in finding ECM, as the junior user, adopted Kahn's Mark in good faith.  The majority of courts and commentary take the view that the junior user's knowledge of the senior user's mark at the critical date (*i.e.*, the date

---

[103] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990).

[104] *Id.*

[105] *Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 271 (4th Cir. 2003).

of adoption) is sufficient to defeat a claim of good faith.[106]  This Court, however, "has not expressly joined this majority view."[107]  Kahn respectfully requests it does.  And in doing so, Kahn requests the Court find the district court erred in concluding ECM is a remote, good faith junior user since ECM had knowledge of Kahn's use of the Mark at the critical date.

The remote, good-faith user standard is derived from two Supreme Court opinions, both of which expressly rely on the fact the junior user was unaware of

---

[106] *See Nat'l Ass'n for Healthcare Commc'ns, Inc. v. Central Ark. Area Agency on Aging, Inc.*, 257 F.3d 732, 734 (8th Cir. 2001) (*Tea Rose-Rectanus* defense proven only because the junior user "did not know of [the senior user's] prior usage when it adopted" the mark.  The junior user was in "good faith" because the mark was first used "without knowledge of [the senior user's] prior use."); *Thrifty Rent-A-Car Sys., Inc. v. Thrift Carts, Inc.*, 831 F.2d 1177 (1st Cir. 1987) ("To be able to invoke the § 1115(b)(5) exception . . . the junior user must have used the mark continuously in that location and initially in good faith without notice of an infringing mark."); *Money Store v. Harriscorp. Finance, Inc.*, 689 F.2d 666, 674 (7th Cir. 1982) ("A good faith junior user is one who begins using a mark with no knowledge that someone else is already using it."); *Woman's World Shops Inc. v. Lane Bryant Inc.*, 5 U.S.P.Q. 2d 1985, 1988 (T.T.A.B. 1988) (holding if a junior user in a "remote" territory adopts and uses a mark with knowledge that it is being used by another, it is not a "good faith," innocent adoption and does not satisfy the requirements of the *Tea Rose-Rectanus* doctrine); *Yankee Spirits, Inc. v. Gasbarro*, No. Civ. 96-10967PBS, 1998 WL 428092, at *11 (D. Mass. 1998); *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 876 (E.D.N.Y. 1978) (To be a remote, good faith user, "a junior user must have adopted the mark in good faith without knowledge of the originator's claim to the mark."); *Pike v. Ruby Foo's Den, Inc.*, 232 F.2d 683, 686 (D.C. Cir. 1956); 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:7 (4th ed.) (citing cases).
[107] *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 700 (5th Cir. 2001)

the senior user.[108]    The first of the two was *Hanover*, which established the *Tea Rose* doctrine.[109]    Prior to the *Hanover* decision, common law followed a first-in-time regime wherein nationwide rights were granted to the first user of a mark.[110]    *Hanover*, however, created an exception to this rule by preventing junior users from being enjoined as long as their use of a mark was innocent and made in good faith.[111]

The plaintiff and senior user in *Hanover* began use of the TEA ROSE mark in 1872, while the junior user began use in 1885.[112]    The senior user sought an injunction in 1912 once there was finally market overlap between the competing companies.[113]    Prior to the suit, the junior user was unaware of the plaintiff's use of the mark to sell a competing product.[114]    In holding the plaintiff was estopped to assert trademark infringement in the territory where the junior user adopted the mark, the Court relied on the fact the junior user "in good faith ***and without notice***" established goodwill in the mark in a remote market.[115]

---

[108] *See Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 419 (1916); *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 103 (1918).
[109] *Hanover*, 240 U.S. at 415.
[110] *Id.*
[111] *Id.* at 410-11.
[112] *Id.* at 407, 409-10.
[113] *Id.* at 408.
[114] *Id.* at 410-11.
[115] *Id.* at 419 (emphasis added).

Two years later, in *United Drug*, the Court expanded the *Tea Rose* doctrine to prevent a senior user from entering a market where a junior user has acquired rights in good faith.[116]    In *United Drug*, the defendant began using the mark in Kentucky approximately six years after the plaintiff began using it in Massachusetts to market similar products.[117]    The parties came into conflict when the plaintiff sent products into Kentucky.[118]    As in *Hanover*, the junior user began using the mark without knowledge of the plaintiff's prior use.[119]    Relying on that fact, the Court refused to enjoin the junior user from using the mark in its local market.[120]

As noted above, most courts hold the junior user's knowledge of the senior user's use of the mark as a matter of law destroys good faith. This Court, however, has not expressly joined the majority *or* minority view.    Indeed, *C.P. Interests*— the case relied upon by the district court—makes it clear this Court has not yet taken a position.[121]    In *C.P. Interests*, the defendant began use of the mark in 1952

---

[116] *United Drug*, 248 U.S. at 100-01.
[117] *Id.* at 95-97.
[118] *Id.* at 101.
[119] *Id.*
[120] *Id.*
[121] *See C.P. Interests*, 238 F.3d 690, 700 (5th Cir. 2001) (citing *El Chico, Inc. v. El Chico Café*, 214 F.2d 721, 726 (5th Cir. 1954)) ("The Fifth Circuit, however, has not expressly joined this majority view, and our past precedent ***implies*** a test to the contrary—specifically, that knowledge of use is but one factor in a good faith inquiry.").

in California and sought to expand its operations into Texas in 1980.[122] The plaintiff, who first used the mark in Texas in 1963, argued it acquired the right to use the mark at issue by virtue of qualifying as a "remote junior user."[123] The jury agreed and awarded damages.[124] On appeal, the defendant argued the district court abused its discretion by instructing the jury that knowledge of the senior user's use of the mark does not defeat good faith, but is one factor that may be considered.[125] The defendant argued knowledge of its prior use defeated any claim of good faith.[126] In finding the district court did not abuse its discretion, the Court noted past precedent merely *implies* knowledge of use is but one factor in the good faith analysis.[127] Notably, there was no mention in *C.P. Interests* regarding whether there existed evidence the junior user knew of the senior user at the time it adopted the mark at issue.

The Court in *C.P. Interests* relied on its 1954 *El Chico* opinion in concluding the district court did not abuse its discretion.[128] In *El Chico*, the plaintiff owned a prominent nightclub in New York named "El Chico."[129] The nightclub was Spanish in character, atmosphere, decorations, food, and

---

[122] *Id.* at 692.
[123] *Id.*
[124] *Id.* at 692-93.
[125] *Id.* at 700.
[126] *Id.*
[127] *Id.*
[128] *Id.*
[129] *El Chico*, 214 F.2d at 722.

entertainment.[130]   The defendants operated numerous restaurants in Texas under the name "El Chico Café."[131]   The restaurants did not have entertainment, were not considered nightclubs, and were Mexican—not Spanish—in food, furnishings, and entertainment.[132]   The plaintiff's nightclub opened in 1925, while the first El Chico Café opened in 1940.[133]

After learning of the defendants' use of the mark in 1950, the plaintiff senior user sought an injunction against the junior users.[134]   The district court granted the injunction as to one defendant and both parties appealed.[135]   On appeal, the Fifth Circuit found the extensive use of the mark precluded a finding of infringement absent actual confusion or an intent to deceive, neither of which the court found to exist.[136]   In reversing the grant of the injunction, the Fifth Circuit found that while the defendants were aware of the senior user's use of the mark, they were also aware the plaintiff did not have an exclusive right to the mark as against them where there was no likelihood of confusion and no intent to benefit from the reputation and goodwill of the plaintiff.[137]   Therefore, the *El Chico* court did not

---

[130] *Id.*
[131] *Id.* at 722-23.
[132] *Id.*
[133] *Id.* at 722.
[134] *Id.* at 723.
[135] *Id.* at 722.
[136] *Id.* at 726.
[137] *Id.*

expressly hold a junior user's knowledge of a senior user's use is not dispositive of good faith.

This Court should adopt the majority view. It is in line with the statutory constructive notice provision.[138] Indeed, if a junior user's use of the mark after having **constructive** notice of the senior user's use via federal registration of the mark negates good faith, then **actual** notice of a senior user's claim to the mark demands a similar conclusion.[139] The incontestability provision of the Lanham Act also supports this conclusion by allowing the junior user to assert a defense to the incontestability of a mark if it adopted the mark "without knowledge of the registrant's prior use."[140]

The preliminary injunction entered by the district court is unprecedented. Nearly every case applying the remote, good-faith user doctrine deals with a *senior* user seeking to enjoin a junior user.[141] Here we have the opposite—the district court permitted the *junior* user to enjoin the senior user from using its own mark. It allowed the junior user to use the remote, good-faith user doctrine as a sword rather than a shield. In doing so, the district court found good faith exists despite ECM's knowledge of Kahn's prior use. Kahn has been unable to locate even a

---

[138] *See* 15 U.S.C. § 1072 (registration of a mark provides constructive notice of the registrant's claim of ownership).

[139] *Johanna Farms*, 468 F. Supp. at 877.

[140] 15 U.S.C. § 1115(b)(5).

[141] *See, e.g., El Chico*, 214 F.2d at 722-24.

single decision in which a court has awarded preliminary injunctive relief against a senior user despite finding the junior user was aware of the senior user's use of the mark prior to adopting it.[142]

In finding good faith, the district court relied on ECM's self-serving assertion Kahn agreed ECM would "own" the Mark.[143] It did so despite the fact ECM admitted it could not remember that timeframe.[144] Kahn argues the parties did not reach such an agreement.[145] And importantly, there is no documentary support for the unilateral assertion. Thus, even if ECM's self-serving testimony were credible, it is insufficient to support an assignment of the trademark[146], which is effectively what ECM argues it had been granted. Indeed, "one prominent commentator suggests that without documentary evidence, an assignment 'may [only] be proven by clear and *uncontradicted* oral testimony of a person in a

---

[142] Kahn has not located any decisions in which such permanent injunctive relief was granted either.

[143] ROA.204 ("The second element [of the remote, good faith user doctrine] is met in that the Court is satisfied that [ECM] had a good faith belief that it could use the mark even if Kahn's consent was ultimately necessary."); ROA.205 ("There is sufficient credible evidence that Kahn agreed that [ECM] would "own" the [Mark] in the Texas area.").

[144] ROA.814 ("[Y]ou're asking me to go back five, six years and I don't have the memory to do that.").

[145] ROA.877-78.

[146] *See Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 265-66 (5th Cir. 1999); *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997).

position to have actual knowledge."[147]    The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits, and a preliminary injunction should be denied if the court is required to resolve complex questions of law.[148]  ECM should not be allowed to oust a *senior* user from its market on grounds of good faith based solely on its own contradicted, self-serving testimony grounded in a legally unrecognizable oral assignment.

Accordingly, Kahn respectfully requests this Court hold a junior user's knowledge of a senior user's use of a mark at the critical date is sufficient to destroy the junior user's right to preliminary enjoin the senior user, and in turn, reverse the district court's decision.

## CONCLUSION

ECM offered no evidence irreparable harm is likely absent injunctive relief. The district court made no findings of irreparable harm.  And since the Supreme Court's *eBay* and *Winter* decisions foreclosed the presumption of irreparable harm in Lanham Act suits, the district court erred in finding ECM satisfied its burden of showing a likelihood of irreparable harm.  Its decision should be reversed.

---

[147] *Magic Touch*, 124 F.3d at 884 (emphasis added) (quoting 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:4 (4th ed.)).
[148] *Healthpoint, Ltd. v. Ethex Corp.*, 273 F. Supp. 2d 817, 868-69 (W.D. Tex. 2001).

Alternatively, the district court erred in preliminarily enjoining Kahn, the senior user, from using the Mark, despite finding ECM, the junior user, had knowledge of Kahn's prior use of the Mark. The district court's conclusion ECM acted in good faith is contrary to the view held by the majority of courts that a junior user's knowledge of a senior user's mark defeats a claim of good-faith adoption of the mark. And absent good faith, a junior user cannot obtain remote, good-faith user status. Accordingly, the district court erred in concluding ECM is a remote, good-faith user and its decision should be reversed.

Dated: November 26, 2014       Respectfully submitted,

KLEMCHUK KUBASTA LLP

*/s/ Casey L. Griffith*
Casey L. Griffith
Texas Bar No. 24036687
Austin S. Champion
Texas Bar No. 24065030
Michael C. Barbee
Texas State Bar No. 24082656
8150 North Central Expwy., 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001 Fax
Casey.Griffith@kk-llp.com
Austin.Champion@kk-llp.com
Michael.Barbee@kk-llp.com

**COUNSEL FOR DEFENDANTS-APPELLANTS**

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.  Excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 7,340 words.


*/s/ Casey L. Griffith*
Casey L. Griffith

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 26, 2014, a true and correct copy of the foregoing Brief for Defendants-Appellants were served via electronic filing with the Clerk of Court and all registered ECF users.

Alan L. Busch
Email: busch@buschllp.com
Christopher Martin Albert
Email: albert@buschllp.com
Robert Ruotolo
Email: ruotolo@buschllp.com
Busch Ruotolo & Simpson, L.L.P.
Suite 250
100 Crescent Court
Dallas, TX 75201
(214) 855-2880

Dated: November 26, 2014

*/s/ Casey L. Griffith*